UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LUIS B. SANCHEZ, | ) |
|       Plaintiff | ) |
| v. | ) |
| The COMMONWEALTH OF MASSACHUSETTS, and Massachusetts Police Officers JAMES J. FOLEY, MICHAEL A. SWEET, and DANIEL T. PURTELL, | ) |
|       Defendants | ) |

CA. 1:15-cv-10120

## COMPLAINT AND REQUEST FOR JURY TRIAL

### INTRODUCTION

1. This is an action in civil rights and tort to recover for personal injuries plaintiff sustained at the hands of the three defendant state police troopers, and in the presence of their supervisor, when they beat him unlawfully while in custody at the Massachusetts State Police Andover barracks.

### JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983, alleging violations of the Fourth and Fourteenth Amendments to the United States Constitution, and also pursuant to the common law of torts. Title 28 U.S.C. §1331 and 1343 provide federal question jurisdiction over all federal claims, and 28 U.S.C. §1367 provides supplemental jurisdiction over state law claims.

### PARTIES

3. Plaintiff Joseph Mr. Luis B. Sanchez ("Mr. Sanchez") is and was at all pertinent times, a citizen of the United States and a resident of Essex County, Massachusetts.

4. The Commonwealth of Massachusetts is a sovereign subject to limited liability pursuant to M.G.L. c. 258 for negligence of its agents, servants, and employees as well as negligence of its agency the Massachusetts State Police, and for purposes of the same the Commonwealth has a usual place of business in Boston, Suffolk County, Massachusetts.

5. Defendant James J. Foley ("Trooper Foley") was at all pertinent times a duly appointed and sworn Massachusetts State Police officer, and he resides in Worcester County, Massachusetts.

6. Defendant Michael A. Sweet ("Trooper Sweet") was at all pertinent times a duly appointed and sworn Massachusetts State Police officer, and he resides in Essex County, Massachusetts.

7. Defendant Daniel T. Purtell ("Trooper Purtell") was at all pertinent times a duly appointed and sworn Massachusetts State Police officer, and on information and belief he resides in Middlesex County, Massachusetts, or in Essex County, Massachusetts.

8. Each individual defendant is sued in his individual capacity.

FACTS

9. Each of the previous paragraphs is incorporated as if fully set forth herein.

10. At all pertinent times each individual defendant acted as alleged in this Complaint under color of the laws, statutes, ordinances, and/or regulations of the Commonwealth of Massachusetts.

11. On January 31, 2012, Trooper Foley arrested Mr. Sanchez on charges of driving while under the influence of intoxicating liquor and resisting arrest.

12. Trooper Foley transported Mr. Sanchez to the Massachusetts State Police barracks in Andover for booking and processing.

13. Mr. Sanchez' first language is Spanish, and at the time of the incident he had limited ability to speak or to understand English.

14. Because of Mr. Sanchez' limited proficiency in English, at booking Trooper Foley communicated with Mr. Sanchez through a translator to obtain identity information and to Mirandize him as per State Police regulation.

15. A system at the Andover State Police barracks connected Trooper Foley and Mr. Sanchez to an interpreter by telephone and stored an audio recording of Trooper Foley's conversation with Mr. Sanchez, running approximately twelve and-a-half minutes in length.

16. On the said recording Trooper Foley is heard speaking in English, Mr. Sanchez speaks predominantly in Spanish, and a third speaker translates between them.

17. On information and belief Mr. Sanchez he stood by a speakerphone, speaking and listening to the interpreter.

2

18. Trooper Foley is heard on the recording stating "Mister Sanchez has the right to remain silent" and that "anything he says may be used against him a court of law or other proceeding."

19. Mr. Sanchez is heard in the audio tape responding to Trooper Foley "Okay," indicating that he understood these statements.

20. As memorialized in the recording, Trooper Foley then told Sanchez: "You have the right to consult with a lawyer before answering any questions and you may have him present via with you during questioning."

21. Mr. Sanchez' response in Spanish was: "Quiero un abogado antes de cualquier pregunta," which the translator interpreted to Trooper Foley as "I would like to have an attorney before any questioning."

22. In response to Mr. Sanchez' statement that he wanted counsel present for any questioning, Trooper Foley replied: "That's fine."

23. But Trooper Foley, although he acknowledged Mr. Sanchez' request for counsel, otherwise ignored it.

24. Trooper Foley continued the Miranda warning, telling Mr. Sanchez that if he could not afford a lawyer one would be provided at no cost.

25. Trooper Foley next advised Mr. Sanchez, in response to a question from him, that he was being charged with operating under the influence of alcohol.

26. When Mr. Sanchez in turn asked: "The test for alcohol that I got, is that under the law?" Trooper Foley replied "I'm gonna give him the real test in a minute."

27. By making the foregoing statement Trooper Foley manifested his intention to force and compel to Mr. Sanchez to submit to a breathalyzer test notwithstanding that Mr. Sanchez had the legal right to refuse the test and that he had just clearly invoked his right to have legal advice.

28. Then, despite Mr. Sanchez' statement that he wanted a lawyer before any questioning, Trooper Foley went on to tell him he could "answer any question or make any statements he wishes."

29. Mr. Sanchez understood the translation and told Trooper Foley: "Okay."

30. Trooper Foley stated that if Mr. Sanchez "decides to answer questions, he may stop at any time and consult a lawyer."

31. Sanchez again replied: "Okay."

3

32. Mr. Sanchez then interjected, "As long as it is explained the way it is before I don't think I was drinking with the proof, I don't think it went over the limit on the alcohol."

33. Foley can be heard asking the interpreter: "Well, does he understand the rights he was just read?" "Yes or no?"

34. Mr. Sanchez replied in Spanish "No entiendo, completamente" (I don't completely understand). The interpreter translated Sanchez' statement as follows: "I don't understand what you're telling me."

35. Trooper Foley, apparently aggravated by this response, retorted, "What doesn't he understand with those rights?"

36. It was at this time that Mr. Sanchez took a step back from where he had been standing at the speakerphone; Trooper Foley can be heard saying on the audio recording: "Come here."

37. At that time Trooper Foley forcefully grabbed Mr. Sanchez by the back of the neck and shoved him towards the phone.

38. Sanchez was handcuffed at the time.

39. According to one witness Mr. Sanchez was in handcuffs at that time and remained handcuffed throughout the incident.

40. According to a different witness when the translator told Trooper Foley that Mr. Sanchez didn't understand the explanation of his rights Trooper Foley responded by handcuffing Mr. Sanchez as other troopers assisted.

41. Just after Trooper Foley is heard on the recording sayding "Come here," Mr. Sanchez makes a series of statements that the interpreter did not translate: "Amigo, respetame, tienes que respetarme a mi, tienes que respetarme, no me puedes agarrar asi, agarrame asi, no puedes hacer eso, what you fucking, No puedes hacer eso, dile que mi abogado, que quiero a un abogado." i.e. , "Friend, be respectful, you must be respectful towards me, you have to respect me, you cannot grab me like that, grab me like that, you cannot do that, what you fucking, you cannot do that, tell him my lawyer, I want a lawyer."

42. Trooper Foley can be heard during this segment saying "stop resisting," without translation and without specific instruction to the handcuffed prisoner in his custody.

43. Before he was forcefully held by the neck by Trooper Foley, Mr. Sanchez was cooperative, nonthreatening, and compliant.

4

44. As Trooper Foley continued using force on him, Sanchez can be heard on the recording stating repeatedly in Spanish, "You cannot force me . . . . You cannot force me to do what you want me to do," and at one point "Yo soy tan gringo como tu." i.e., "I am as much a gringo as you."

45. Mr. Sanchez exclaimed "What you fucking . . ." in shock and pain because Foley was hurting him.

46. Mr. Sanchez called out in Spanish to another prisoner nearby asking him to "Record it" and telling him:"Hey, he's mistreating me here."

47. Troopers Foley, Purtell, and Sweet then seized Mr. Sanchez and forced him to bend forward and down, with his arms cuffed behind his back and face toward the floor as they dragged him away from the booking area.

48. Witnesses saw Mr. Sanchez strike his head on the wall as the troopers attempted to bring him into cell room.

49. Immediately after this blow, a witness saw Mr. Sanchez and the troopers pass from his view and then heard a loud bang.

50. At that time the said witness changed his position and saw Mr. Sanchez lying on the floor, his face covered with blood.

51. Sanchez passed out momentarily from the blow to the head.

52. Sanchez told this witness, "They hit me in the head."

53. On information and belief the three troopers deliberately injured Mr. Sanchez by smashing his head into a wall and by then striking him or causing him to strike an object once out of view of other arrestees in the booking area.

54. Sanchez was kicked and slapped in the face as well.

55. Sanchez bled profusely from a 6 centimeter gash in his scalp and lay crying and pleading for help, stating in Spanish "I am a good man. . . I have not done anything bad," . . . "Oh, God he killed me," . . . " I need an ambulance, please call an ambulance . . . They hit me in the head."

56. An officer can be heard on the recording saying to call an ambulance.

57. Mr. Sanchez was taken to Lawrence General Hospital, where 11 staples were required to close his head wound.

58. Exhibit 1 fairly and accurately depicts Mr. Sanchez's head injury at the Lawrence General Hospital.

59. Exhibit 2 fairly and accurately depicts Mr. Sanchez's staples to close his head injury.

60. Mr. Sanchez also suffered injuries to his neck and back.

61. Sanchez also has experienced hearing loss, headaches, blurred vision, some dizziness and anxiety as a direct result of the incident.

62. In the emergency room, Sanchez was asked by State Police Sgt. Eric S. Bernstein what happened and he told him he had been hit in the head with a boot.

63. He has incurred in excess of $7,000.00 in reasonable medical expenses.

64. At all pertinent times all defendants' were trained and sworn police officers having clear knowledge and understanding of the legal and professional standards governing arrest, the use of force, and truthful reporting of the actions of officers and others involved in incidents resulting in arrest and/or injury.

65. At all pertinent times defendants' knew that in making an arrest officers must use no greater force than is necessary.

66. At all pertinent times defendants' knew that they must use force capable of causing serious injury or death only against a person at that time posing an imminent risk of such harm to another person.

67. At the time of his injury Mr. Sanchez posed no threat of harm, and certainly no threat of serious harm, to any person.

68. There was no legal justification for Trooper Foley to grab Mr. Sanchez by the back of the neck and shove him toward the speaker phone or for the three defendant troopers to slam Mr. Sanchez head first into to any fixed solid object.

69. Each defendant knew that slamming a person's head into a fixed solid object would incur a substantial and imminent risk of serious bodily injury, disability, disfigurement, or death.

70. The defendant troopers, having injured Mr. Sanchez seriously by use of excessive and unreasonable force, conspired to conceal their misconduct by lying in their official reports of the incident.

71. M.G.L. c. 268 § 6A proscribes and criminalizes false written reports by public officers or employees.

72. Foley wrote in his report that his initial use of force happened when "SANCHEZ began to get agitated and stated he didn't understand why he was here because he wasn't drunk and had passed the PBT. When I tried to move SANCHEZ closer to the phone, he began to struggle and had to be restrained by myself."

73. Then Trooper Foley's report falsely stated that "while being placed in Cell # 1 he lost his balance and fell into the toilet cutting his head."

74. In a later report Trooper Foley elaborated: "As they put him in Cell #1 he fell forward striking his head on the toilet bowl, causing an approximately 3" laceration to the top of his head."

75. Upon information and belief, Troopers Purtell and Sweet also gave false accounts of the incident.

76. Sanchez did not spontaneously fall or lose his balance as the three State Police troopers escorted him to a cell, nor did he of his own accord strike his head on a toilet bowl or other fixed solid object.

77. Trooper Foley falsely charged Sanchez with resisting arrest even though he knew the charges were false and Sanchez could not be charged with resisting arrest while in custody and already handcuffed.

78. The charges of resisting arrest were dismissed by the Court on July 13, 2013 at the request of the Commonwealth.

79. Defendants' conduct was the moving force behind the violation to Mr. Sanchez's civil rights.

## COUNT I

### 42 U.S.C. § 1983: Unreasonable Force
### Trooper Foley, Purtell, Sweet

80. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

81. Defendants' used unreasonable force at the State Police Barracks when they came in contact with Mr. Sanchez.

82. These actions deprived Mr. Sanchez of well established rights to freedom from unreasonable force under the Fourth Amendment to the United States Constitution.

83. As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## COUNT II

### Assault and Battery
### Troopers Foley, Purtell and Sweet

84. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

85. Defendants' committed the common law tort of assault and battery against the plaintiff when they applied unreasonable force while in custody.

86. As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## COUNT III

### Malicious Prosecution
### Troopers Foley, Purtell and Sweet

87. Each of the foregoing paragraphs is incorporated as if fully set forth herein. Defendants' caused criminal charges to be brought against Mr. Sanchez without probable cause and with malice. Mr. Sanchez charge of resisting arrest was dismissed with the consent of the Commonwealth.

88. As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## COUNT IV

### Massachusetts Civil Rights Act, M.G.L. c. 112 § 11IM
### Troopers Foley, Purtell, Sweet

89. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

90. Defendants' intimidated plaintiff and or attempted to coerce him to take a breathalyzer and to waive his rights to counsel and to possibly incriminate himself despite the fact that he categorically exercised the right to have a lawyer present in the event of any questioning.

91. Defendants' violated Mr. Sanchez's civil rights under the Massachusetts Civil Rights Act, M.G.L. c. 112 § 11IM by threats, intimidation, and coercion.

92. As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## COUNT V

### Intentional Infliction of Emotional Distress
### Troopers Foley, Purtell, Sweet

93. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

94. The conduct of defendants' constituted intentional infliction of emotional distress.

95. By their actions, Defendants' subjected the plaintiff to reprehensible conduct knowingly, intentionally, willfully, purposely, maliciously and with such reckless disregard of the consequences as to display a conscious indifference to the danger of harm and injury.

96. As a direct result of the intentional conduct of the defendants in this count, Mr. Sanchez suffered severe emotional distress and great pain of body and mind.

## COUNT VI

### Negligent Infliction of Emotional Distress
### Troopers Foley, Purtell, Sweet

97. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

98. The conduct of these defendants constituted a negligent infliction of emotional distress.

99. Defendants negligently subjected the plaintiff to reprehensible conduct without regard for Mr. Sanchez's well-being.

100. As a direct result of the conduct of this defendant, Mr. Sanchez suffered severe emotional distress and great pain of body and mind.

## COUNT VII

### Civil Conspiracy in Violation of Section 1983
### Troopers Foley, Purtell, Sweet

101. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

102. These Defendants' conspire to hide their misconduct when they agreed to deprive Mr. Sanchez of his constitutional rights by arresting him without probable cause, by filing false reports, by employing excessive force and falsely claiming his injuries resulted from fall.

103. They filed false reports to justify their unreasonable and unconstitutional use of force which violated his constitutional rights.

104. As a direct and proximate result thereof, the plaintiff suffered the injuries as described herein.

## COUNT VIII

### Mass. Tort Claims Act Chapter 258
### Commonwealth Massachusetts State Police and its employees

105. Each of the foregoing paragraphs is incorporated as if fully set forth herein.

106. On January 31, 2012 Troopers Foley, Purtell, and Sweet were working within the scope of their employment for the Commonwealth of Massachusetts/State Police.

107. Mr. Sanchez counsel served upon Secretary of Public Safety, Andrea Cabral, (Executive Office of Public Safety and Security), via certified return receipt requested letter a Notice and Presentment letter under the Massachusetts Tort Claims Act on January 14, 2014.

108. The same letter was served via certified mail upon the office of Attorney General in accordance with the provisions of Chapter 258.

109. On January 29, 2014 Sanchez's counsel received a letter from Elizabeth J. Ryan, Deputy General Counsel of the Executive Office of Public Safety and Security acknowledging receipt of Sanchez's notice and presentment letter and stating the 258 letter had been referred to the Mass. State Police for investigation. No other letters were received by Sanchez's counsel from the Executive Office of Public Safety and Security.

110. Similarly on February 25, 2014, the Presentment Coordinator at the Attorney General's office acknowledged receipt of the notice and presentment letter mailed to the Attorney General on January 10, 2014.

111. Plaintiff has received no additional communications from the Attorney General's Office Executive Office of Public Safety and Security nor any offers of compromise.

112. Mr. Sanchez has satisfied all conditions precedent to file this negligence action under Chapter 258 § 4.

113. As a direct and proximate result of the negligent conduct of the Troopers Foley, Purtell and Sweet while in the course of their employment for the Commonwealth of Massachusetts, plaintiff was harmed as stated herein.

**DEMANDS FOR RELIEF**

The Plaintiff hereby respectfully requests the following relief:

1. All compensatory damages recoverable;

2. Injunctive relief;

3. All punitive damages recoverable;

4. All attorney's fees, costs and expenses allowable;

5. Any and all other relief as the Court deems just and proper;

6. That defendants be found joint and severally liable.


**PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL COUNTS IN THE COMPLAINT**

    Respectfully submitted,
    Plaintiff LUIS B. SANCHEZ
    By his attorneys,

    */s/ Hector E. Pineiro*

    _____
    Hector E. Pineiro, BBO # 555315
    Robert A. Scott, BBO # 648740
    Law Office of Hector E. Pineiro, P.C.
    807 Main Street
    Worcester, MA 01610
    Tel. (508) 770-0600
    hector@pineirolegal.com
    robin@pineirolegal.com

Dated: January 16, 2015.